## HANDLESMAN *v.* ALBERTS.

[No. 24,145. Filed December 2, 1924. Rehearing denied June 5, 1925.]

1. LANDLORD AND TENANT.—*Landlord has reasonable time after tenancy begins to make trade improvements to a storeroom.*— Where a lease of a storeroom provided that the landlord was to put in a new front, but was silent as to when the improvement was to be made, the landlord had a reasonable time after the tenancy began in which to have the work done. p. 268.

2. LANDLORD AND TENANT.—*Lessee cannot recover for losses for period covered by making improvement stipulated in lease when no time was specified for making the improvement.*—Where a lease of a storeroom provided that the landlord was to put in a new front, but was silent as to when the work was to be done, the lessee could not delay taking possession of the room because the improvements were being made, and then hold the landlord liable for his losses caused by such delay, unless an unreasonable time was taken in making the improvement. p. 269.

From St. Joseph Superior Court; *Andrew N. Hildebrand,* Judge *pro tem.*

Action by Harry Alberts against Jacob Handlesman. From judgment for plaintiff, the defendant appeals. *Reversed.*

*B. J. Brown, Shively, Gilmer, Arnold & Doran* and *Dudley M. Shively,* for appellant.

*Parker, Crabill, Crumpacker & May* and *W. S. Carlisle,* for appellee.

GAUSE, J.—This is an action by appellee to recover of appellant damages for the alleged breach of a lease for a store room.

Appellant, the owner of a certain store room in the city of South Bend, leased the same, in writing, to appellee for the term from May 1, 1920, to April 29, 1935.

Appellee claimed that appellant failed to deliver possession on May 1, 1920, and that possession was not delivered until October 25, 1920. He claimed damages

on account of the loss of the use of the premises during such time, and also special damage on account of seasonable merchandise which he had bought to retail during the summer becoming of less value because of his not being able to retail it during the season for which it was bought. He also claimed damages on account of drayage, storage and some other small items which were incurred by reason of the delay in getting possession, and one item for failure to heat the building, in accordance with the contract, for a few weeks after possession was given.

The cause was tried by a jury and a verdict was returned for appellee in the sum of $7,400 and judgment was rendered for this sum.

Appellant filed a motion for a new trial, claiming error in the amount of the recovery in that it is too large; also, that the verdict is not sustained by the evidence, and that certain errors of law occurred at the trial.

In view of the conclusions we have reached, it will not be necessary to consider any causes assigned for a new trial except those challenging the amount of the verdict and the sufficiency of the evidence.

The premises were rented for the purposes of a retail ladies wearing apparel store. The lease provided that the landlord was to install a front in said building, with window space at least eighteen feet in depth, in accordance with a blue-print to be furnished by the tenant. The lease contained no provision as to when the front was to be installed.

It appears from the testimony of appellee that the tenant who was in possession of the premises when the lease was executed, did not give possession until May 1, 1920, when appellee's tenancy was to begin, and that thereupon appellant commenced work on installing the new front; that the old front was torn out and some

boards placed around the front to keep the public out. That the work was not completed until about October 25, 1920, when appellee moved in.

There is no evidence that appellee was denied the possession of said premises except that he claims it was not in a condition to be used on account of the work that was being done in installing the new front, the plans for which he had furnished.

Appellee further testified, in substance, that about April 20, 1920, he had a conversation with appellant in which he informed appellant that he wanted to go to New York to buy summer goods for the store and wanted to know if he could get possession May 1, 1920, telling appellant that he understood the tenant in the building could stay after May 1, for $10 per day, but that appellant informed him that the other tenant would be out May 1, and that he would put a large force on the work and could have it completed in a short time, "that it would spring up like a mushroom."

Appellee further testified that thereupon he went to New York and bought $10,000 worth of merchandise for the summer trade, but on account of the room not being ready, he was compelled to store it in a part of another store where he was engaged in a similar business, and that he did not get to retail the goods so purchased during that season. He testified that as a result of the change in seasons, the merchandise was worth only fifty cents on the dollar, and that $2,500 of it was worthless. He also testified that he was damaged to the extent of $176.94 on account of appellant failing to furnish heat, as the lease provided, and he was required to expend that amount to supply the same, after he took possession. He also testified that he was compelled to expend for extra drayage and storage, on account of the delay, the sum of $138.20. He also testified that the rental value of such premises was $350 per month for

the time he was kept out of possession, which he figures would make his damages on that account $2,041.46.

Assuming that the jury allowed appellee the full amount of his claim for damages on account of loss of the rental value, the failure to furnish heat and the cost of drayage and storage, they must have allowed him over $5,000 for decrease in the value of his merchandise, to have rendered a verdict for $7,400.

Appellant testified that he offered appellee the key to the premises about May 1, and asked him to take possession. Appellee denied this, but testified that he would not have taken possession if it had been offered. The only reason shown by the evidence why appellee did not take possession was on account of the condition of the room, caused by the work of remodeling, in pursuance to the provisions of the lease. There is no contention and no evidence that there was anything done that rendered the room unfit for occupancy except what was necessarily incident to placing the new front therein. In other words, appellee was kept from occupying the room at the time specified in the lease by reason of the putting in of the new front. Was this any breach of the lease? Under the lease, appellant was compelled to put in the front, according to a blue-print furnished by appellee. There is no contention that the front is not according to such blue-print. There is no evidence that the work was negligently done or that the room was unnecessarily torn up; neither is there any contention or any evidence that the work was not carried out expeditiously and completed within a reasonable time after it was begun. The only ground upon which appellee seems to base any complaint, is that the work was not completed before the time for his tenancy to begin. In our opinion, this was not a breach of any stipulation in the lease. The lease is silent as to when the improvement was to

be made and, in the absence of any provision as to this, or any provision from which such an agreement would be inferred, the landlord would have a reasonable time after the tenancy began to make the improvement specified. 1 Tiffany, Landlord & Tenant, p. 603; 36 C. J. 194; *Trimble* v. *Collins* (1918), 64 Colo. 464, 172 Pac. 421.

In the case of *Trimble* v. *Collins, supra,* the lease provided that the landlord was to make some changes and improvements in the building leased, but no time was specified for the doing of the work. It was not completed on June 15, when the lease was to begin, and the lessee refused to take possession. The trial court instructed the jury that if there was no time fixed for making the improvements, then they should have been completed by June 15. On appeal, the court held that this was not a correct construction of the lease, and said, "No time being stipulated for the completion of the repairs, the law presumes an intent that they should be made within a reasonable time."

As before pointed out, there was no evidence as to the time reasonably required to make the improvement or that an unreasonable time was taken.

It appears that ten days before the tenancy was to begin, and before appellee had purchased any goods, he knew that the work had not been begun and was 2. informed it would be begun when the other tenant moved out May 1. Notwithstanding this knowledge, he went ahead and bought goods which he knew to be seasonable goods, the perishable nature of which he charges that appellant knew. Of course, he knew it also. If he knew before he made his purchase that the work was not to start until about May 1, then how can he justify his claim that appellant should be liable for his loss, unless appellant is shown to have failed to do something that appellee had a right to ex-

pect him to do, or to have done something that appellee had a right to expect he would not do?

If, after appellee's conversation with appellant, ten days before May 1, when appellee was assured by appellant that the other tenant would get out May 1, and the work would then be completed in a short time, appellant then failed to do something that appellee had a right to expect him to do, or did something appellee had a right to expect him not to do, what was it? Was it that the work took longer than was necessary? There is no evidence to this effect. Was it that the work was done improperly, or that the premises were torn up more than was necessary to do the work stipulated? There is no evidence of any such fact.

Under the contract between the parties, appellant had a reasonable time to make the improvement specified. Appellee did not take possession because the improvement was being made. The making of the improvement was no breach of the contract and there is no evidence which would sustain a finding that the work was not done within a reasonable time. It follows that, under the evidence, appellee was not entitled to recover anything on account of the alleged breach of the lease by appellant in failing to deliver possession on May 1. The only item of damages that the evidence would sustain is the sum of $176.94 on account of appellant failing to furnish heat, as stipulated in the lease, after appellee moved in.

Other alleged errors discussed are not apt to arise again.

Judgment reversed, with instructions to the trial court to sustain appellant's motion for a new trial.